No. 33,706

EDITH L. LAWITZKA, *Appellant*, v. THE BOARD OF COUNTY COMMIS-
SIONERS OF THE COUNTY OF ALLEN, and THE PENN MUTUAL LIFE
INSURANCE COMPANY, Interpleader, *Appellees*.

(76 P. 2d 880)

Opinion filed
March 5, 1938.

*Guy Lamer* and *DeWitt M. Stiles*, both of Iola, for the appellant.

*J. C. Edwards*, county attorney, *Frederick G. Apt* and *A. R. Enfield*, both
of Iola, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This case was started as a claim against the county
commissioners of Allen county for the value of rock quarried on the
farm of plaintiff and for damages to the real estate. The claim was
denied by the county commissioners. On appeal to the district court
judgment was given in favor of an interpleader and the board of
county commissioners. Claimant appeals.

The issues are a little complicated and will be carefully noted.
Claimant filed her claim with the board of county commissioners in
the amount of $760.60. This claim was denied by the board. Claim-
ant appealed to the district court, pursuant to G. S. 1935, 19-223 and
19-224.

When this appeal was filed motions of the county commissioners
that claimant be ordered to file a bill of particulars and that the
Penn Mutual Life Insurance Company be made a party to the action
were sustained.

In her bill of particulars claimant pleaded that during the summer
and autumn of 1934 she was the owner of the farm in question, sub-
ject to a mortgage-foreclosure action brought by the Penn Mutual
Life Insurance Company, and was refinancing the loan secured by
the mortgage. The bill of particulars further alleged that she told
an agent for the county commissioners about the refinancing arrange-

ments, and the agent told her that the county would give from two to eight cents a cubic yard for rock taken from the farm, and after the rock was taken the county would restore the land to a reasonably safe condition.

The bill of particulars further alleged that thereafter, on or about the first day of June, 1934, the county commissioners came on the land to take out the rock, and she told them that they had no contract with her, and that they must take nothing off the land unless they made a contract with her; that the county commissioners thereafter, without any legal right, removed 3,270 yards of rock from the farm; that the rock was crushed on the farm and the dust damaged claimant; that the rock was taken out over the pasture of claimant so that she was damaged in the amount of $375.

The bill of particulars alleged further that the quarry was left with perpendicular sides, and she was damaged $100 on that account; that she had been damaged $5 by removal of stock water, $20 on account of dust from the rock crusher, and the rock removed from the farm was worth $261.60. Claimant asked judgment in the amount of $760.60. The demurrer of the board of county commissioners to this bill of particulars was overruled.

The answer of the board of county commissioners alleged that in December, 1933, the board entered into a contract with the Penn Mutual wherein the board was given the right to enter upon the land in question for the purpose of removing rock; that it did remove 3,274 yards of rock, for which it agreed to pay two cents a cubic yard, or $65.40; that this entering and removing of the rock was by authority of a contract between the board and the Penn Mutual; that the board purchased from the tenant on the farm a right of way on through the pasture; that the board was willing to pay either the Penn Mutual or claimant for the rock, whichever the court should decide. The board denied that it had damaged the pasture land or that claimant had the right of possession when the rock was removed. The board prayed that the court decide whether claimant or the Penn Mutual was entitled to the $65.40.

The answer of the Penn Mutual Life Insurance Company first was a general denial. It then alleged that on the 10th day of December, 1932, by virtue of an action to foreclose a mortgage it received a deed from the sheriff for the real estate in question; that the deed was duly recorded; that from December 10, 1932, to February 28, 1934, it was in actual, open and full possession of the real estate

in question, free of all claims of claimant; that during all this time it was entitled to receive all the rents from the place.

The answer further alleged that in December, 1933, while the defendant was in possession of the real estate in question it entered into a contract in writing with the board of county commissioners for the removal of certain rock; that in accordance with the contract the board removed 3,274 yards of rock, and there was due the Penn Mutual $65.40, for which claim was made and filed with the board; that all of this rock was removed while the Penn Mutual was in possession and the owner of the property; that the $65.40 was due the Penn Mutual; that on February 28, 1934, the Penn Mutual conveyed the real estate in question to claimant by a warranty deed but that the deed did not convey to claimant by its terms any title or interest to any rock removed nor to any rents accruing during the ownership of the property by the Penn Mutual. The answer prayed that the Penn Mutual recover judgment for the $65.40.

To the answer of the Penn Mutual the claimant first filed a reply by way of a general denial. The reply then alleged that claimant was entitled to receive $115.50 for rentals for the real estate from the Penn Mutual and $25 for hedge posts, for the reason that on April 17, 1934, the Penn Mutual entered into a creditor's agreement for payment, a redemption sale to be financed by the Federal Land Bank of Wichita, in which the Penn Mutual agreed to accept $3,000 in bonds, with interest at the rate of five percent per annum from April 13, 1934, to the date of the consummation of the contract, and agreed to accept no other consideration except the $3,000; that under this agreement all the rentals collected by the Penn Mutual, amounting to $115.50, and $25 for posts, and all right in the stone removed belonged to claimant. The reply prayed judgment against the Penn Mutual in the amount of $140.50 and against the board of county commissioners for the value of the rock sold.

Because so much stress is laid on the creditor's agreement it will be referred to here. It appears to be in the form first of a letter from the loan correspondent of the Federal Land Bank addressed to the Penn Mutual. The letter stated that the Penn Mutual held a foreclosed farm and asked the company to state the earliest date the indebtedness could be paid and what amount the company would accept. This inquiry was dated April 13, 1934. Apparently on the same paper the Penn Mutual stated in reply that the amount of the indebtedness referred to was $3,000 and that on payment to it of

$3,000 on or before May 1, 1934, or if paid thereafter by including interest at the rate of five percent per annum on $3,000 from May 1 to the date of payment, this sum would be accepted in full satisfaction of the claim. It was also agreed that the Penn Mutual would accept bonds and that no note, mortgage or other consideration would be received from the debtor.

By way of reply to the answer of the board of county commissioners the claimant filed a general denial and specially denied that the board had a contract with anyone authorizing them to remove any rock from the real estate in question. The reply prayed for a judgment against the county as asked for in her claim filed with the board.

At the beginning of the trial the county offered to confess judgment for $65.40.

The husband of claimant testified that the Penn Mutual foreclosed the mortgage; that it took a sheriff's deed to the place on February 27, 1933; that an agent for the Penn Mutual talked to claimant about leasing the farm and claimant and her husband stated that they would have to sublease and recommended a tenant who leased the farm from the Penn Mutual and farmed it; that claimant and her husband made an application to the Federal Land Bank in accordance with the wishes of the Penn Mutual. The creditor's agreement heretofore referred to was then introduced. Then several letters from the insurance company were introduced. The witness testified that neither he nor his wife had received any rentals from the farm for 1934 and had received nothing for the rock taken from the farm nor for the damages. He then testified about a conversation had with a representative of the board of county commissioners.

The Penn Mutual then showed that it received its deed to the farm on December 10, 1932, and the deed from the Penn Mutual back to claimant was dated February 28, 1934, and recorded February 11, 1935. This deed was delivered to the land bank in November, 1934, but not recorded until February 11, 1935. The husband of claimant testified that quarry operations were begun the first part of 1934 and continued for about three weeks. The witness testified that more than half the rock was quarried after he was notified that a deed had been issued by the company and sent to the land bank. He also testified that about the middle of January, 1934, a tenant started to remove a hedge line fence and he notified the Penn Mutual, and an

agent of that company arranged that half the posts were to remain and belong to claimant, but the Penn Mutual took all the posts. On cross-examination the witness testified that disbursement to the Penn Mutual was made on November 7, 1934, but his deed from the Penn Mutual had been sent to the bank in July; that there was some error in the way the deed was made and it was changed to his wife's name.

After further testimony, which did not add anything to this claimant's case, she rested. The Penn Mutual demurred to the evidence of claimant and asked judgment for $65.25. The board of county commissioners also demurred to the evidence of claimant. The trial court sustained both demurrers and gave judgment to the Penn Mutual in the amount the board of county commissioners had offered to confess.

In doing this the court said:

"In this case, a foreclosure had been filed and a sheriff's deed issued and the Penn Mutual Company had title to the property and the possession of the property. They had rented the property to a tenant, and it seems that the claimants here were occupying the premises as subtenants under this tenant, rather than under the Penn Mutual, and it seems to me the situation more nearly resembles the matter of their having an option to repurchase the property."

There can be no doubt that the deal whereby the land was conveyed back to the claimant was not completed until November, 1934. There can be no doubt that all the things complained of by claimant happened during the time the Penn Mutual had title to the real estate and possession of it through its tenant. The misunderstanding of claimant and her husband arose, no doubt, from the fact that they remained on the land all the time and had the intention to repurchase it all the time from the Penn Mutual. They were subtenants all the time, however, of the tenant of the Penn Mutual and had no title to the real estate whatever.

The first error urged by claimant is the order of the court refusing her demand for a jury trial. In view of the action of the trial court in sustaining the demurrers to the evidence and of what we shall say of that presently, this point is not good. If the action of the trial court in sustaining these demurrers was correct, then it would have done claimant no good to have had a jury in the first place.

The next point argued by claimant is that the court erred in excluding competent evidence. The evidence to which reference is made is the refusal to admit exhibits "P" and "Q." They were two

letters written to the Penn Mutual and the Federal Land Bank by counsel for claimant, in one case more than six months, and in the other case more than a year after the cause of action accrued. Both letters are merely a statement of the claimant's claim. No reason appears why they would be of any value to prove any issue in this case.

Claimant next argues that the trial court erred in refusing to recognize the creditor's agreement that has been mentioned heretofore. Claimant urges that under the terms of this agreement the claimant was entitled to have all the damages and rent from the farm while the negotiations were going on. We have examined the agreement and are unable to give it the construction insisted on by claimant. That construction might have been given this agreement had it been entered into before claimant had lost title and the right of possession to the farm. In this case, however, about all the agreement amounted to is that the Penn Mutual agreed to take from claimant $3,000 for the place and to take bonds instead of cash. There is no provision in it providing that the claimant should take anything by the deed but the title to the land as it was when conveyed to him.

The argument of claimant that the trial court erred in sustaining the demurrers of the board of county commissioners and the Penn Mutual to the evidence of claimant has already been dealt with in this opinion.

The judgment of the trial court is affirmed.